## Boone v. Commonwealth.

(Decided September 25, 1928.)

### Appeal from Butler Circuit Court.

1. Homicide.—In prosecution for murder, evidence held sufficient to support verdict of guilty.

2. Homicide.—Instruction in murder prosecution, where defendant did not do actual shooting, but was merely in company of one who did, evidence showing they were threatened by deceased held prejudicially erroneous, as not authorizing defendant to act in his own defense, unless danger was impending, that is, that he was in actual danger, and being confusing, by not clearly authorizing defendant to act in defense of party doing shooting.

3. Criminal Law.—In prosecution for murder, where defendant did not do actual shooting, it was improper to ask constable, who arrested defendant, whether defendant represented to him that he had been struck during difficulty with deceased, or pointed out any wounds on his person, it not appearing from record that defendant discussed such matters with constable, or that he was questioned in reference to them.

S. H. BROWN for appellant.

J. W. CAMMACK, Attorney General, and GEO. H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

Van Embry and Ebb Boone were jointly indicted in the Butler circuit court, charged with the murder of Cecil Embry. In separate trials, Van Embry was convicted of murder and received a life sentence, and Boone was sentenced to two years in the penitentiary. Boone appeals, and further reference to him will be as the defendant.

The homicide occurred about noon on Sunday, July 24, 1927, and upon the public highway near McKinley Chapel, a small country church in Butler county. The defendant and Van Embry were both residents of Grayson county. The defendant is a married man, 43 years of age, and lived with his family on a farm, while Embry was engaged in the manufacture of cross-ties in the same vicinity. On the day previous, defendant took a neighbor family in his car to visit some relatives in Butler county, and stayed overnight. On Sunday morning, with the aid of Cooper and Otis Beasley, he sought and procured two gallons of moonshine whisky, which he stored in his car and ostensibly started for home, but for some reason not disclosed went by the home of Jesse Coots, a farmer living in the vicinity of McKinley Chapel. Coots had two married daughters of questionable character; one Era, aged 21, and the other Irbie, aged 15, and his house seems to be a gathering place for young men. Boadley Coots spent Saturday night there, and early Sunday morning the deceased, Cecil Embry, arrived, and later Dorin Fleenor and Cooper Beasley, who had in the meantime separated from defendant; it appearing that all of these were kinsmen of Coots, and that Cecil had lived with him. While Cooper Beasley was at the Coots residence, the defendant had his car parked at the side of the road near McKinley Chapel, and shortly afterward Cecil Embry, Van Embry, Dorin Fleenor, Boadley Coots, Otis Beasley, Roy Cardwell, and defendant assembled on the road near that place. Van Embry had spent the night before with his brother in Grayson county, and met defendant and procured a pint of whisky from him. He was riding horseback, and came up with the party at this place.

The two girls are the chief witnesses for the commonwealth. With some variation, they state in substance that, shortly after 12 o'clock, they, together with Cooper Beasley, started to the home of their uncle, two miles away, to procure some horses to ride to the railway station, taking the route by McKinley Chapel. Before reaching that point they came up with Roy Cardwell, Boadley Coots, and Dorin Fleenor sitting on a sandbank at the side of the road, talking. Era and Boadley Coots had a short conversation. A short distance up the road they saw Cecil Embry, Van Embry, and defendant, who were engaged in cursing and boisterous talk.

This seemed to be directed at Cecil. They went up to the party, and Era took hold of Cecil and asked him to return home with her, telling him they were trying to raise trouble with him. Cecil agreed, and started with her, but had taken only a few steps when Van Embry pressed a pistol against her side and told her to turn him loose. She did so, and at that time defendant took Cecil by the shirt collar and led him around a turn in the road, behind some timber, using threatening language as he did so. They heard Van Embry tell defendant to turn Cecil loose; that he was going to kill him. This was followed by three shots. Cecil and Van came back in sight. Cecil was walking with his hands up and asked her to come to him, saying Van had shot him. Van was ejecting some shells from the pistol and acting in a menacing manner, and they left the road and went home in a roundabout way, and there met Cooper Beasley and Boadley Coots, coming up the road, laughing. She asked about Cecil, and they informed her that he was not hurt. Cecil did not return, and late in the afternoon the two girls and their father went in search of him, and found him sitting in a gully about 50 yards from the place of the shooting. He was carried to Jesse Coots' home and a physician procured, who found a fatal bullet wound in his abdomen, from which he died the following morning.

Cooper Beasley states that he walked down with the girls and got into the car with Otis Beasley; that Cecil Van and the defendant were in an argument; that defendant struck Cecil in the face, and immediately after that Van fired the shot. Cecil was doing nothing at the time defendant struck him.

The defendant testifies that his car was parked near the church: that Cooper Beasley had gone to Jesse's house for a purpose not stated; that Cooper and Era returned, and Era asked him to take her to the railway station at 1 o'clock, which he agreed to do. She told him that she would have to get a check cashed, and would be ready at that time, and for him to wait in front of the church until she came; that when Van Embry came up his horse was frightened and ran through a field, and he dropped his pistol; that Cecil Embry, who had arrived in the meantime, went with Van to look for the pistol; that it was found, and Cecil furnished Van a handkerchief to clean the dust off; that the three sat down, and Van, who had retained the pistol in his hand, laid it on Cecil's leg. Defendant cautioned him to be careful, and suggested

that they take a drink, which they did. Cecil asked him if he was going to take the girls to the railway station, and he told him he was; that Cecil said: "I don't know whether you are or not; that he might, if he had the money." Defendant responded that he had enough to get by on, and Van said, "If you haven't got it, I have; how much do you want?" Others came up, and a discussion arose over the liquor. Defendant told them he was not selling it, but they could go ahead and drink it.

After this a discussion arose between Van and Cecil over a note that Van had owed Cecil's sister, and which he claimed he had paid; that he (defendant) said, "That note ain't nothing to me." At this time Cooper and Irbie got in the car, and Era was wanting Cecil to give her the check. Cecil called him aside and told him not to cash the check; that it was not good; that he said he was willing to cash the check, and asked the girls to get in. Cecil spoke to him and said, "You are a G— d— son of a b—." He asked him not to call him that; that at that time Cecil hit him and staggered him, and he sat down; that one of the party came to him and raised him up. Cecil acted as if he was going to run back on him, and he asked them to turn him loose, and not let the fellow beat him up; that while lying on the ground he heard a gun fire, but did not know Cecil was shot. Afterwards he got up and drove the car home. He was unarmed, was anticipating no trouble, and had no feeling at all in the matter.

Van Embry corroborates the defendant in the main details, and states that Cecil was a much larger man than either he or defendant, and was springing toward him, drawing a rock, and that he fired. Cecil did not fall, and he left. Deceased made a dying declaration, in which he charged Embry with the crime, but did not implicate the defendant. It is further shown that the Coots girls' reputation is bad, and they are contradicted in many particulars.

1. It is insisted that the verdict is not sustained by the evidence, but this position is untenable, as clearly appears from the above recitation of facts.

2. The fifth, or self-defense, instruction is confusing, in that it does not clearly authorize the defendant to act in defense of Van Embry, and is prejudicially erroneous in not authorizing him to act in his own defense, unless the danger was impending—i. e., that he was in actual danger—and for this reason the case must be reversed.

The third instruction is also confusing in one of these respects. On another trial, instead of the words "and not in his necessary or apparently necessary self-defense," appearing between the words "malice" and "but" in the third instruction, the court will use the words "and not in the necessary or apparently necessary self-defense of himself or of Van Embry."

In the sixth line of the fifth instruction he will insert the words "or Van Embry," after the pronoun "he," and before the verb "was." And in the eleventh line of the same instruction the words "real or to defendant apparent" should be inserted after the words "impending danger, if any."

Some questions were asked and answered as to the good citizenship of the witnesses. On another trial this will be omitted, though after proper foundation is laid the moral character of the witnesses may be proven; also, if objection is made to such evidence, the court should admonish the jury as to its effect.

The constable who arrested defendant was asked, "As you brought him to Morgantown, did Ebb Boone represent to you that he had been struck during the difficulty, or point out to you any wounds on his person?" and over objection answered, "No." This question is improper. It was proper for the constable to tell of the defendant's physical condition; but it does not appear from this record that the defendant discussed these matters with the constable, or that any reason exists for his so doing.

Wherefore the judgment is reversed, and cause remanded for proceedings consistent with this opinion.